UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

      Plaintiff,

v.                            Criminal Case No. 15-20351

Shahid Tahir D-1,            Sean F. Cox
                                  United States District Court Judge

      Defendant.

_____/

**OPINION & ORDER DENYING**
**DEFENDANT TAHIR'S MOTION TO SUPPRESS EVIDENCE**
**AND FOR RETURN OF PROPERTY**

     In this action, five different defendants are charged with engaging in a health care fraud conspiracy and a conspiracy to pay and receive unlawful kickbacks. The matter is currently before the Court on a Motion to Suppress Evidence and for Return of Property filed by Defendant Shahid Tahir. Defendant Tahir's Motion to Suppress asks the Court to suppress evidence seized by F.B.I. agents who executed a search warrant at his residence in Bloomfield Hills, Michigan. He also asks the Court to order the return of property pursuant to Fed. R. Crim. P. 41(g). This motion was fully briefed by the parties and the Court heard oral argument[1] on February 17, 2016. For the reasons set forth below, the Court shall DENY the motion.

**BACKGROUND**

     On June 11, 2015, a federal grand jury returned an indictment against Defendant Tahir and his four Co-Defendants. The five Defendants in this case are identified in the Indictment as

---

[1]An evidentiary hearing is not necessary, and was not requested, as to this motion.

follows:  1) Shahid Tahir, a licensed physical therapist in Michigan, who owned or was associated with At Home Network, At Home Hospice, and A Plus Hospice ("the Tahir Companies") 2) Waseem Alam, a licensed physician in Michigan who owns Waseem Alam, M.D. P.C. and Woodward Urgent Care, and is alleged to have provided care there and also referred patients to the Tahir Companies; 3) Hatem Ataya, a licensed physician in Michigan, who owns Hatem Ataya, M.D. P.C. and allegedly referred patients to the Tahir Companies; 4) Manawar Javed, an individual who co-owned A.N.N., Inc.; and 5) Muhammad Tariq, an individual who co-owned A.N.N., Inc.

Various business entities described in the Indictment include the following, which were all Medicare providers:  1) A.N.N., Inc., d/ba/ At Home Network ("At Home Network"), a home health agency that purportedly provided in-home physical therapy, occupational therapy, speech pathology, and skilled nursing services; 2) A.N.N., Inc. d/b/a At Home Hospice ("At Home Hospice"); 3) A Plus Hospice & Palliative Care Inc. ("A Plus Hospice"); 4) Waseem Alam M.D., P.C., a medical practice; 5) Woodward Urgent Care PLLC ("Woodward Urgent Care"); and 6) Hatem M. Ataya, M.D., P.C., a medical practice.

The Indictment charges Tahir, as well as all of his Co-Defendants, with Conspiracy to Commit Health Care Fraud and Wire Fraud, in violation of 18 U.S.C. § 1349 (Count 1) and with Conspiracy to Pay and Receive Kickbacks, in violation of 18 U.S.C. §371 - Conspiracy (Count 2).  Defendant Alam faces additional structuring charges. The Indictment also contains forfeiture allegations.

The search warrant at issue in this motion was obtained on June 16, 2015, and it authorized officers to search 3840 Manchester Court, Bloomfield Hills, Michigan, which is

2

Defendant Tahir's residence.  (*See* Ex. A to Def.'s Br.).   Similar search warrants were also obtained for Defendant's business offices.

The Affidavit submitted in support of the request for this search warrant was signed by Special Agent Brian Fairweather with the F.B.I.  It is a lengthy and detailed Affidavit – spanning 55 pages and 127 paragraphs.  The Court will not restate its contents here and only provides an overview.

The Introduction Section noted that Fairweather was participating in an investigation relating to allegations of violations of federal law by Defendant Tahir and others, including Dr. Waseem Alam ("Alam"), Dr. Hatem Ataya ("Ataya"), Manawar Javed ("Javed"), and Muhammed Tariq ("Tariq").  (Aff. at ¶ 4).

Agent Fairweather's Affidavit states that evidence uncovered during his investigation has revealed that "Tahir, the President and Chief Executive officer of At Home Network, Inc." and his associates, including Alam, Ataya, Javed, and Tariq, have "systematically defrauded Medicare" by: "engaging in an ongoing conspiracy to pay and receive illegal health care kickbacks in exchange for the referral of beneficiaries for services covered by Medicare," "submitting false claims for home health care services that were medically unnecessary and never provided," "issuing prescription narcotics to known drug seekers and abusers, and using them as inducements to convince Medicare beneficiaries to accept home care services that were not medically necessary" and "conspiring to hide both the illicit nature of the above activities and the source and amount of the financial remuneration derived from the fraud scheme by those involved."  (Aff. at ¶ 27).

In support of the requested search warrants, Agent Fairweather's affidavit included

3

information from two confidential sources and analyses of bank records and relevant Medicare

data.  The affidavit contains detailed allegations as to the alleged conspiracies and how they

operated.  Agent Fairweather's Affidavit included the following section:

PROBABLE CAUSE TO BELIEVE DOCUMENTS ARE
MAINTAINED AT SUBJECT PREMISES 4 (TAHIR RESIDENCE):

107.    Public records checks performed by agents show that Tahir currently
resides at 3840 Manchester Court, Bloomfield Hills, Michigan (Subject
Premises 4).  According to the State of Michigan's LARA website, Tahir
registered this address as the office of Professional Services Management.
Professional Services Management was incorporated by Tahir's brother,
Manawar Javed, in February 2008 as a healthcare management and
consulting services firm.  Paperwork filed with the State of Michigan
listed Javel as the sole incorporator and his residence as the address of the
registered office.  Since November 2008, however, Tahir has been
registered with the state as Professional Services Managerment's
President, Secretary, Treasurer, Director, and Registered Agent.
Moreover, Tahir's residence has been registered during this time as the
company's address, first at 5201 Park Ridge Drive, West Bloomfield,
Michigan, and later at Tahir's current Manchester Court residence, which
is Subject Premises 4.

108.    As mentioned above, financial records and Medicare claims data show that
Professional Services Management bank account was used for years by
Tahir and Javed as a vehicle to provide payments to physicians who are
responsible for millions of dollars in reimbursement to At Home Network
and At Home Hospice.

109.    It has been your Affiant's experience and training that as a general rule,
companies maintain at their business addresses a variety of documents
related to the operation of the business, including, but not limited to:
contracts, professional agreements, accounting ledgers, invoices, bank
records, pay stubs, employment records, calendars, logs, licensing records,
and correspondence.

110.    All of these documents are important evidence in the investigation of what
your Affiant believes to be the use of Professional Services Management

4

for illegitimate purposes – specifically to launder the proceeds of the health care fraud and kickback scheme and conceal the nature and source of payments to the various co-conspirators.

111.   According to the State of Michigan's Secretary of State, Shahid Tahir's Mercedes sedan with Michigan license plate number CFN-8987 is registered to Subject Premises 4.  Surveillance conducted in January 2015, identified Shahid Tahir driving his Mercedes sedan from the At Home Network office to the vicinity of the Subject Premises 4.

112.   Statements from Tahir's personal Comerica Bank account, shared with his wife, are sent to the Tahir Residence.  As detailed above, Dr. Ataya received thousands of dollars in checks from this account at the same time he was referring home health patients to At Home Network.

(Agent Fairweather's Aff. at ¶¶ 107-112).

The "Receipt for Property Received/Returned/Released/Seized" (Ex. B to Def.'s Motion) reflects that numerous items were seized from Tahir's Residence, including: 1) documents and records (Items No. 1 through 22); 2) a laptop computer (Item No. 23); and 3) what appeared to be six Rolex-branded watches (Item Nos. 24-29).

On January 15, 2016, the Government filed a "Second Forfeiture Bill of Particulars" (Docket Entry No. 122) that gives notice that the Government is seeking forfeiture of one Rolex-branded watch that was seized from Tahir's residence.

## ANALYSIS

Defendant Tahir's Motion to Suppress asks the Court to suppress evidence seized during the execution of a search warrant at his residence in Bloomfield Hills, Michigan on June 16, 2015.  Tahir contends that the search warrant affidavit fails to provide probable cause to believe that evidence of criminal violations would be found at that location.  Tahir further contends that the *Leon*-good-faith-exception to suppression should not apply here.  Finally, Tahir asks the

5

Court to order the return of his property, pursuant to Fed. R. Crim. P. 41(g).[2]

The Government opposes Ataya's motion and asserts that: 1) the search warrant affidavit contained sufficient probable cause to believe that evidence of a crime would be found at Tahir's residence; and 2) even if probable cause was lacking, the evidence should be not be suppressed under the *Leon*-good-faith-exception to suppression. The Government further asserts that Tahir's request for return of his property should be denied because Tahir has an adequate remedy at law to address the return of the seized property.

The Court held a hearing on this Motion on February 17, 2016.

## I.     Did The Search Warrant Affidavit Provide Probable Cause To Believe That Evidence Of A Crime Would Be Found At Tahir's Residence?

In determining whether to issue a search warrant on the basis of a particular affidavit, a magistrate reviews the affidavit according to the totality of the circumstances and "make[s] a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying the hearsay information, there is probable cause." *United States v. Smith*, 510 F.3d 641, 652 (6th Cir. 2007) The affidavit underlying a search warrant is sufficient to support a finding of probable cause if, based on the totality of the circumstances, it provided the magistrate with a substantial basis for concluding that there was probable cause to issue the warrant. *See Illinois v. Gates*, 462 U.S. 213, 238 (1983).

_____

[2]Tahir's Motion also argued that the search warrant is constitutionally insufficient because it fails to describe items to be seized with reasonable particularity. That argument was made as to watches that were seized from Tahir's residence. At the hearing, the Government stated that it will not be using any of the watches seized from Tahir's residence as evidence in this case. With respect to Tahir's request for return of the watches, that request is addressed in Section III of this Opinion & Order.

6

This Court, as a reviewing court, is to "accord the magistrate's determination 'great deference.'" *United States v. Allen*, 211 F.3d 970, 973 (6th Cir. 2000) (citation omitted).   In reviewing whether the affidavit supports the magistrate's probable-cause determination, this Court is to review the affidavit in a "commonsense, rather than a hypertechnical," manner. *Id.* (citation omitted).  Probable cause exists when there is a "fair probability," given the totality of the circumstances, that contraband or evidence of a crime will be found in a particular place. *Id.*

In his motion, Tahir argues that there was not a sufficient nexus between the alleged criminal conduct and Tahir's residence.  He asserts that a "mere filing with the State of Michigan listing the residence address as a 'registered office' does not itself create cause to be that any evidence of business activity would be located at that address."  (Def.'s Br. at 2).  Tahir argues that:

> The public filing with the State of Michigan LARA are required pursuant to MCL 450.1241, that provides that a corporation authorized to transact business in Michigan must have a "registered office" and "resident agent."  It is not required that the registered office must be a place of business.  It does not follow from the mere filing of a "registered office" address that any evidence o business activity will be found there.  The LARA filing for Professional Services Management shows only that 3840 Manchester Court was the address of the "registered office," and not a place where any business was conducted.

(Def.'s Br. at 8-9).

The Michigan statute that Tahir references provides that every domestic or foreign corporation authorized to transact business in Michigan shall have a "registered office, which may be the same as its place of business."  Mich. Comp. Laws § 450.1241(1)(a).  It is undisputed that Tahir was listed as the President, Secretary, Treasurer, Director, and the Registered Agent for Professional Services, Management, Inc. and that the Manchester Court premises was the

only office identified for that entity in its filing.  (*See* Ex. D to Def.'s Motion).

In response to Tahir's Motion, the Government asserts that Agent Fairweather's Affidavit set forth sufficient facts establishing probable cause that evidence of criminal activity would be found at Manchester Court Premises.  The Government notes that the 3840 Manchester Court address "was the sole address of record of Professional Services management, which as facts in the Affidavit evince, was a shell entity whose purpose appeared to be concealing or disguising kickback payments.  In fact, PSM's sole business location, from its inception to its most current fling, remained a residence: first that of Javed, then of Defendant.  Defendant even changed PSM's registered address to his most current address when he moved residences."  (Govt.'s Br. at 11).

The Government further argues that "[s]ince there was no evidence to suggest that PSM's business would be done anywhere else but Manchester Court, it would reasonably follow that any business records associated with PSM would be housed at the Manchester Court address." (Govt.'s Br. at 11) (citing *United States v. Abboud*, 438 F.3d 554 (6th Cir. 2006)).

The Court agrees with the Government that Agent Fairweather's Affidavit set forth sufficient facts establishing probable cause that evidence of illegal conduct would be found at Tahir's residence, which is also the registered address for Professional Services Management, an alleged shell entity used in the alleged conspiracies.  This Court rejects Defendant Tahir's nexus argument for the same reason it was rejected in *Abboud*:

> Defendant's argument that there was no nexus between the locations searched, his home and his businesses, and the evidence sought is without merit. One does not need Supreme Court precedent to support the simple fact that records of illegal business activity are usually kept at either a business location or at the defendant's home. Likewise, personal financial records are also usually stored at a person's

8

home or place of business.

*United States v. Abboud*, 438 F.3d at 572.

## II.   Does *Leon* Good-Faith Exception To Suppression Apply Here?

Additionally or alternatively, the Government asserts that even if this Court determines

that the search warrant was invalid, suppression of the evidence is not warranted here because the

officers relied upon the validity of the warrant and acted in good faith. The Government relies on

*United States v. Leon,* 468 U.S. 897, 926 (1984).

"In *Leon*, the Supreme Court held that the exclusionary rule 'should be modified so as not

to bar the admission of evidence seized in reasonable, good-faith reliance on a search warrant

that is subsequently held to be defective.' " *United States v. Weaver*, 99 F.3d 1372, 1380 (6th

Cir.1996) (quoting *Leon*, 468 U.S. at 905). The Sixth Circuit has held that there are four specific

situations where the *Leon* good-faith-reliance exception is inappropriate: "(1) where the affidavit

contains information the affiant knows or should have known to be false; (2) where the issuing

magistrate wholly abandoned his or her judicial role; (3) where the affidavit was so lacking in

indicia of probable cause as to render official belief in its existence entirely unreasonable [or]

where the warrant application was supported by [nothing] more than a "bare bones" affidavit;

(4) where the warrant is so facially deficient that the executing officers cannot reasonably

presume it to be valid." *United States v. Washington*, 380 F.3d 236, 241 (6th Cir. 2004).

Here, Defendant Tahir's motion anticipates that the Government will assert that the *Leon*

good-faith-exception should be applied here. (Def. Tahir's Motion at 9-10).  Defendant Tahir

argues that the affidavit at issue here falls under the "so lacking" exception to the application of

the good-faith rule. (*Id*. at 10).

9

The "so lacking" test is less demanding than the "substantial basis" test for determining the existence of probable cause so the mere lack of probable cause does not preclude the application of the good faith rule. *Washington,* 380 F.3d at 241. The affidavit at issue here is not a "bare bones" affidavit that contains merely conclusions by the affiant.

This Court concludes that even if the search warrant did not establish probable cause, the facts in the affidavit could not be deemed so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable. Thus, this Court would not apply the exclusionary rule even if there had been a lack of probable cause for the issuance of the search warrant.

### III.    Should The Court Order The Return Of The Watches Seized From Tahir's Residence?

In his motion, Tahir also asks the Court to order the return of the watches seized during the search of his residence, pursuant to Fed. R. Crim. P. 41(g).   His opening brief, however, does not contain any analysis or discussion of that rule or its application here.

Federal Rule of Criminal Procedure 41(g) governs motions to return property and provides as follows:

> A person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return. The motion must be filed in the district where the property was seized. The court must receive evidence on any factual issue necessary to decide the motion. If it grants the motion, the court must return the property to the movant, but may impose reasonable conditions to protect access to the property and its use in later proceedings.

Fed. R. Crim. P. 41(g).

The Government's response to Tahir's motion asserts that five of the six Rolex-branded

10

watches that were seized have since been deemed to be counterfeit.  As to those five watches, the Government states that "Counsel for the United States and Counsel for Defendant are in discussions regarding their proper return."  (Gov't.'s Br. at 15 n.2).

As to the remaining Rolex watch, the Government's Response Brief asserts that because it has filed a forfeiture Bill of Particulars as to that watch (*see* Docket Entry No. 122), Tahir cannot obtain relief under Rule 41(g).

The authority cited by the Government supports its assertion that a person cannot proceed with a motion under Rule 41(g) when they have an avenue for challenging the forfeiture at issue. *See, e.g. Brown v. United States*, 692 F.3d 550 (6th Cir. 2012).  Thus, when there is either a civil or criminal forfeiture procedure under way, a Rule 41(g) motion is not appropriate.  *United States v. Sims*, 376 F.3d 705, 708 (7th Cir. 2004) (Explaining that the "proper office of a Rule 41(g) motion" is "before any forfeiture proceedings have been initiated, or before any criminal charges have been filed, to seek the return of property seized without probable cause, or property held an unreasonable length of time without the institution of proceedings that would justify the seizure and retention of the property.")[3]

The Court will, therefore, deny Tahir's request for the return of property.

### CONCLUSION & ORDER

For the reasons set forth above, IT IS ORDERED that Defendant's Motion to Suppress Evidence and for Return of Property is DENIED.

---

[3]The Court notes that at the February 17, 2016 hearing, Defense Counsel asserted that the one watch that remains at issue was a gift that was given to Defendant Tahir in 2003.  The Government responded that it would discuss the issue with Defense Counsel and may be able to return the watch to Tahir if his representations can be confirmed.

IT IS SO ORDERED.

S/Sean F. Cox
Sean F. Cox
United States District Judge

Dated:  February 18, 2016

I hereby certify that a copy of the foregoing document was served upon counsel of record on February 18, 2016, by electronic and/or ordinary mail.

S/Jennifer McCoy
Case Manager