UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

     Plaintiff,

v.                            Case No. 15-20351

Shahid Tahir, *et al*.,            Sean F. Cox
                                    United States District Court Judge

     Defendants.

_____/

## OPINION & ORDER

In this action, five different defendants are charged with engaging in a health care fraud conspiracy and a conspiracy to pay and receive unlawful kickbacks. The matter is currently before the Court on Motions asking the Court to dismiss Counts 1 & 2 of the Indictment based upon multiplicity and duplicity, filed by Defendants Tahir, Javed, Tariq, and Ataya. These four motions were fully briefed by the parties and were heard by the Court on February 12, 2016. For the reasons set forth below, the Court shall DENY the motions.

## BACKGROUND

On June 11, 2015, a federal grand jury returned an indictment against the five Defendants in this case, who are identified in the Indictment as follows: 1) Shahid Tahir, a licensed physical therapist in Michigan, who owned or was associated with At Home Network, At Home Hospice, and A Plus Hospice ("the Tahir Companies") 2) Waseem Alam, a licensed physician in Michigan who owns Waseem Alam, M.D. P.C. and Woodward Urgent Care, and is alleged to have provided care there and also referred patients to the Tahir Companies; 3) Hatem Ataya, a licensed physician in Michigan, who owns Hatem Ataya, M.D. P.C. and allegedly referred

1

patients to the Tahir Companies; 4) Manawar Javed, an individual who co-owned A.N.N., Inc.;
and 5) Muhammad Tariq, an individual who co-owned A.N.N., Inc.

The business entities described in the Indictment consist of the following, which were all
Medicare providers:  1) A.N.N., Inc., d/ba/ At Home Network ("At Home Network"), a home
health agency that purportedly provided in-home physical therapy, occupational therapy, speech
pathology, and skilled nursing services; 2) A.N.N., Inc. d/b/a At Home Hospice ("At Home
Hospice"); 3) A Plus Hospice & Palliative Care Inc. ("A Plus Hospice"); 4) Waseem Alam
M.D., P.C., a medical practice; 5) Woodward Urgent Care PLLC ("Woodward Urgent Care"); 6)
Hatem M. Ataya, M.D., P.C., a medical practice.

The Indictment charges Ataya, as well as all four of his Co-Defendants, with Conspiracy
to Commit Health Care Fraud and Wire Fraud, in violation of 18 U.S.C. § 1349 (Count 1) and
with Conspiracy to Pay and Receive Kickbacks, in violation of 18 U.S.C. § 371 - Conspiracy
(Count 2).  Defendant Alam faces additional structuring charges and the Indictment also contains
forfeiture allegations.  Counts 1 and 2 are the subject of the pending Motions to Dismiss.

**Count 1**

Count 1 of the Indictment charges Defendants with Conspiracy to Commit Health Care
Fraud and Wire Fraud, in violation of 18 U.S.C. § 1349.  Count 1 alleges that from around
January 2006 to present, Defendants "did willfully and knowingly combine, conspire,
confederate, and agree with each other and others," "to commit certain offenses against the
United States, that is:"

> (a) to violate Title 18, United States Code, Section 1347, that is, to knowingly and
> willfully execute a scheme and artifice to defraud a health care benefit program
> affecting commerce, as defined in Title 18, United States Code, Section 24(b),
> that is, Medicare, and to obtain, by means of materially false and fraudulent

pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit program, in connection with the delivery of and payment for health care benefits, items, and services; and

(b) to violate Title 18, United States Code, Section 1343, that is, to knowingly and with the intent to defraud, devise and intend to devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that the pretenses, representations, and promises were false and fraudulent when made, and did knowingly transmit and cause to be transmitted, by means of wire communication in interstate commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice.

(Indictment at 12-13).

The Indictment alleges that the purpose of the conspiracy was for Defendants and others "to unlawfully enrich themselves by, among other things: (a) submitting and causing the submission of false and fraudulent claims to Medicare for home health care services, hospice services, physician services, and other services; (b) offering, paying, soliciting, and receiving kickbacks and bribes for the purpose of arranging for use of Medicare beneficiary information as the bases of claims submitted for home health care services, hospice services, physician services, and other services; (c) concealing the submission of false and fraudulent claims to Medicare, the receipt and transfer of the proceeds from the fraud, and the payment of kickbacks and bribes; and (d) diverting proceeds of the fraud for the personal use and benefit of the defendants and their co-conspirators." (*Id*. at 13-14). The Indictment includes detailed allegations regarding the manner and means of the conspiracy alleged in Count 1. (*Id.* at 14-17).

**Count 2**

Count 2 of the Indictment charges Defendants with Conspiracy to Pay and Receive Kickbacks, in violation of 18 U.S.C. § 371. Count 2 alleges that from around January 2006 to the present, Defendants "did willfully and knowingly combine, conspire, confederate, and agree

with each other and others," "to commit certain offenses against the United States, that is:"

>   (a) to violate Title 42, United States Code, Section 1320a-7b(b)(2)(A) by
>   knowingly and willfully offering or paying any remuneration (including any
>   kickback, bribe, or rebate) directly or indirectly, overtly or covertly, in cash or in
>   kind for referring an individual to a person for the furnishing or arranging for the
>   furnishing of any items or service for which payment may be made in whole or in
>   part by Medicare, a Federal health care program as defined in Title 18, United
>   States Code, Section 24(b); and
>
>   (b) to violate Title 42, United States Code, Section 1320a-7b(b)(1)(A) by
>   knowingly and willfully soliciting or receiving any remuneration (including any
>   kickback, bribe, or rebate) directly or indirectly, overtly or covertly, in cash or in
>   kind in return for referring an individual to a person for the furnishing or
>   arranging for the furnishing of any item or service for which payment may be
>   made in whole or in part by Medicare, a Federal health care program as defined in
>   Title 18, United States Code, Section 24(b).

(Indictment at 18-19).  Count 2 alleges that the purpose of the conspiracy was for Defendants

and other co-conspirators to unlawfully enrich themselves by offering, paying, soliciting, and

receiving kickbacks and bribes in exchange for referring Medicare beneficiaries for purported

home health care and hospice services.  (*Id*. at 19).  The Indictment includes allegations

regarding the manner and means of the conspiracy alleged in Count 2 (*Id*. at 19-21) and it also

includes allegations regarding overt acts committed in furtherance of the conspiracy alleged in

Count 2.  (*Id*. at 21-22).

## ANALYSIS

### I.   Should The Court Dismiss Count 1 As Duplicitous Because It Improperly Charges Multiple Conspiracies In One Count?

"Separate offenses must be charged in separate counts of an indictment.  Fed. R. Crim P.

8(a)." *United States v. Boyd*, 640 F.3d 657, 665 (6th Cir. 2002).  An indictment is duplicitous if

it sets forth separate and distinct crimes in one count.  *Id*.

"Pursuant to Fed. R. Crim. P. 12(b)(2), if a defendant wishes to get a duplicitous

indictment dismissed, he must raise the issue before trial." *United States v. Adesida*, 129 F.3d

846, 849 (6th Cir. 1997).  Here, four of the five Defendants (Tahir, Ataya, Javed, and Tariq)

have each filed a motion seeking to dismiss Count 1 of the Indictment as duplicitous.  The

motions are nearly identical and the Government, therefore, filed one brief that responds to all

four motions.

      "Duplicitous indictments implicate the protections of the Sixth Amendment guarantee of

jury unanimity." *United States v. Shumpert Hood*, 210 F.3d 660, 662 (6th Cir. 2000).  The Sixth

Circuit has explained:

> The overall vice of duplicity is that the jury cannot in a general verdict render its
> finding on each offense, making it difficult to determine whether a conviction
> rests on only one of the offenses or on both." *United States v. Duncan*, 850 F.2d
> 1104, 1108 n. 4 (6th Cir. 1988). While a duplicative indictment can prejudice a
> defendant in a variety of ways, the primary concern is that a defendant may be
> deprived of his right to a unanimous jury verdict. *See United States v. Savoires*,
> 430 F.3d 376, 380 (6th Cir. 2005); *United States v. Shumpert Hood*, 210 F.3d 660,
> 662-63 (6th Cir. 2000). That is, a jury might return a guilty verdict on the single
> count submitted to them without all twelve jurors agreeing that the defendant
> committed either of the offenses charged within that count. Other adverse effects
> on a defendant "may include improper notice of the charges against him,
> prejudice in the shaping of evidentiary rulings, in sentencing, in limiting review
> on appeal, [and] in exposure to double jeopardy." *Duncan*, 850 F.2d at 1108 n. 4.

*United States v. Kakos*, 483 F.3d 441, 443-43 (6th Cir. 2007).  It has further explained that:

> "The yardstick in determining whether there is duplicity or multiplicity is whether
> one offense or separate offenses are charged and ... this is a difficult and subtle
> question." 2 Charles Alan Wright & Arthur R. Miller, Federal Practice and
> Procedure § 142, at 17 (3d ed. 1999). "The test announced most often in the cases
> is that offenses are separate if each requires proof of an additional fact that the
> other does not." *Id.* (footnotes omitted); *see also Adesida*, 129 F.3d at 849
> (explaining that indictment contained a duplicitous count inasmuch as it charged
> two separate offenses, each requiring different proof); *United States v. Barnett*,
> 418 F.2d 309, 312 (6th Cir. 1969).

*United States v. Davis*, 306 F.3d 398, 415-16 (6th Cir. 2002).

Here, the Defendants make the very same argument as to Count 1 of the Indictment being duplicitous – that Count 1 charges Defendants "with two separate conspiracies, both in violation of § 1349: (1) the submission of false and fraudulent claims to medicare, medicaid, and private insurance companies and (2) soliciting, offering, and paying of health care kickbacks and bribes." (*See* Def. Tahir's Br. at 6).

But Defendants ignore established law when they suggest that the Government's having alleged different violations of § 1349 renders Count 1 duplicitous.  It is well established that "the allegation, in a single count of conspiracy, of an agreement to commit several crimes is not duplicitous, *as conspiracy itself is the crime." United States v. Dale*, 178 F.3d 429, 431 (6th Cir. 1999) (emphasis added).  In *Dale,* the Sixth Circuit explained that:

> It has been clear since *Braverman v. United States*, 317 U.S. 49, 54, 63 S.Ct. 99, 87 L.Ed. 23 (1942), that the allegation, in a single count of conspiracy, of an agreement to commit several crimes is not duplicitous, as conspiracy is itself the crime. *See also United States v. Solimine*, 536 F.2d 703, 711 n. 31 (6th Cir. 1976).

*Dale*, 178 F.3d at 431.  So, for example, a "single conspiracy may have as its objective the distribution of two different drugs without rendering it duplicitous." *Id.*  Accordingly, Count 1 is not rendered duplicitous by virtue of the fact that the alleged overarching conspiracy involved both the submission of false claims and the payment of kickbacks.

To determine the existence of a single conspiracy courts consider: 1) the existence of a common goal; 2) the nature of the scheme; and 3) the overlapping of the participants in various dealings.  *United States v. Smith*, 320 F.3d 647, 652 (6th Cir. 2003).  In its response brief, the Government argues – persuasively –  that Count 1 alleges a single overarching conspiracy. (Govt.'s Br. at 4-9).  First, the Indictment alleges that the conspiracy alleged in Count 1 has a common goal – defrauding Medicare in order to unlawfully enrich themselves by submitting

6

false claims and paying/receiving kickbacks.  The allegations regarding the nature of the scheme

also supports a single conspiracy.  (*Id*. at 5-6).  Finally, the alleged overlapping of participants

also supports a single conspiracy being alleged.  (*Id*. at 7-9).

Moreover, as the Government notes in its response, this duplicity challenge is being

raised prior to trial and based only on the Indictment.  (Govt.'s Br. at 3-4).  As Judge Edmunds

explained in *United States v. Beasley*:

> [A]dditional steps can be taken by the Court, e.g., through jury instructions and a
> special verdict form, to ensure unanimity among the jury as to the object or
> objects of the conspiracy. *See United States v. Kakos*, 483 F.3d at 444–45
> (observing that "proper jury instructions can mitigate the risk of jury confusion
> and alleviate the doubt that would otherwise exist as to whether all members of
> the jury had found the defendant guilty of the same offense") (internal quotes and
> citation omitted); *United States v. Hood*, 210 F.3d 660, 663 (6th Cir. 2000)
> (observing that "[d]uplicitous charges, however, are not necessarily fatal to an
> indictment" because "the court may particularize the distinct offense charged in
> each count in its jury instruction") (internal quotes and citation omitted).

*United States v. Beasley*, 2014 WL 1870790 (E.D. Mich. 2014); *see also Adesida*, 129 F.3d at

849 (The trial court "can cure the error of duplicity by instructing the jury that it must come to a

unanimous verdict in regard to either one offense or the other.").

Accordingly, the Court rejects Defendants' duplicity challenge to Count 1 of the

Indictment and shall allow the Government proceed with that charge.

**II.     Should The Court Dismiss Counts 1 and 2 As Multiplicitous?**

"An indictment is multiplicitous if it charges a single offense in more than one count."

*United States v. Schaffner*, 715 F.2d 1099, 1102 (6th Cir. 1983).   A multiplicitous indictment

raises the specter of multiple punishment for a single offense. *United States v. Gullett*, 713 F.2d

1203, 1211-12 (6th Cir. 1983).

All four of the Defendants that filed motions to dismiss follow the multiplicity argument,

7

nearly verbatim, asserted by Defendant Tahir.  They argue that "Counts 1 and 2 each charge [Defendants] with the same conspiracy to solicit, offer, and pay health care kickbacks and bribes for the purpose of arranging for the use of Medicare beneficiary information as the bases of claims submitted for home health care services, hospice services, physician services, and other services."  (Thahir's Br. at 8).  The assert that, "[a]s a result, the Indictment is improperly multiplicitous and violates the double jeopardy clause."  (*Id*.).

Defendants assert that the test that should be applied by the Court to determine if Counts 1 and 2 are multiplicitous is the "totality of the circumstances" test set forth in *United States v. Sinito*, 723 F.2d 1250 (6th Cir. 1984).  That test "requires the trial court, in determining whether two conspiracies arise from a single agreement, to consider the elements of: 1) time; 2) persons acting as co-conspirators; 3) the statutory offenses charged in the indictments; 4) the overt acts charged by the government or any other description of the offenses charged which indicates the nature and scope of the activity which the government sought to punish in each case; and 5) places where the events alleged as part of the conspiracy took place."  *Sinito*, 723 F.3d at 1256.

Defendants argue that, under *Sinito's* totality of the circumstances test, this Court should find that Counts 1 and 2 allege the same conspiracy:

> Applying these factors, this court should conclude that both counts 1 and 2 allege the very same conspiracy to pay and receive kickbacks prohibited by health care statutes.  The time periods, co-conspirators, statutes alleged violated – that is, the health care statutes which prohibit payment or receipt of illegal remuneration, purposes and placed where the acts occurred, are all identical.  The conspiracy statute alleged in Count 1 does not require any allegation of an overt act, however, the alleged "kickback" purposes of the conspiracies are the same.  Both Counts allege that [Defendants], and others, of [sic] soliciting, offering, and paying health care kickbacks and bribes for the furnishing of any item or service for which payment may be made by Medicare or Medicaid.

(Tahir's Br. at 10).

8

2:15-cr-20351-SFC-MKM   Doc # 135   Filed 02/29/16   Pg 9 of 12   Pg ID 890

Defendants' motions do not discuss the *Blockburger* test as it relates to multiplicity or specifically argue that Counts 1 and 2 are multiplicitous under that test.

The Court finds the Government's argument, that *Sinito* only applies to successive prosecutions of multiple conspiracies of the same statute, persuasive.

First, *Sinito* itself involved that factual scenario – successive prosecutions (one in 1981 and the second case in 1982) of the same statute (RICO conspiracy).

Second, the articulation of the test itself in *Sinito* supports a reading that it applies to successive indictments:

> 1) time; 2) persons acting as co-conspirators; 3) the statutory offenses charged in the *indictments;* 4) the overt acts charged by the government or any other description of the offenses charged which indicates the nature and scope of the activity which the government sought to punish *in each case*; and 5) places where the events alleged as part of the conspiracy took place.

*Sinito*, 723 F.2d at 1256 (emphasis added).

In addition, the Court's explanation as to why that test is used ("an overzealous prosecutor, in drafting the indictment, could choose certain overt acts in one indictment, and a different set of overt acts in a second indictment, thereby carving up one conspiracy into two or even more artificial offenses") also supports such a reading.

Finally, several other Sixth Circuit cases discussing the *Sinito* test also lend support to the Government's position that is limited to successive prosecutions. *See, e.g., United States v. Benton*, 852 F.2d 1456, 1462 (6th Cir. 1988) ("In *Sinito*, we adopted a 'totality of the circumstances' test for *determining whether 'separate conspiracies charged in different grand jury indictments* are, in reality, one for the purposes of the fifth amendment prohibition against double jeopardy.'") (emphasis added); *United States v. Gross*, 1 F.3d 1242, 1993 WL 300393

9

(6th Cir. 1993) (Citing *Sinito* and explaining that "Because of the peculiar characteristics of the offense of conspiracy, which involves an agreement to commit unlawful acts that may continue for an extended period of time and may involve the commission of numerous criminal offenses, the courts have adopted a multi-pronged 'totality of the circumstances' test *to determine whether two successive conspiracy indictments* charge the 'same offense' within the meaning of the Double Jeopardy Clause." (emphasis added); *but see United States v. Lombardo*, 582 F. App'x 601 (6th Cir. 2014) (applying Sinito test in circumstances not involving successive prosecutions).

Accordingly, this Court believes that the *Blockburger* test, rather than the *Sinito* test, is to be applied here, where we are not dealing with successive prosecutions of the same conspiracy statute.[1]

The *Blockburger* test, set forth by the Supreme Court in *Blockburger v. United States*, 284 U.S. 299, 304 (1932), is quite simple:

> The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of fact which the other does not. A single act may be an offense against two statutes; and if each statute requires proof of an additional fact which the other does not, an acquittal or conviction under either statute does not exempt the defendant from prosecution and punishment under the other.

*Id.* at 304 (citations omitted).

The Government's response brief explains how Counts 1 and 2 are not multiplicitous under that *Blockburger* test:

---

[1]Moreover, although it would be a closer call, this Court would reach the same conclusion even if the *Sinito* totality of the circumstances test were applied in this case.

10

The two conspiracy statutes at issue here, 18 U.S.C. §1349, and 18 U.S.C. § 371, meet the *Blockburger* test in at least three ways. First, the general kickback

conspiracy count, 18 U.S.C. § 371, requires proof of an element that the specific health care and wire fraud conspiracy count, 18 U.S.C. § 1349, does not. The kickback conspiracy count requires the following three elements:

> (A) First, that two or more persons conspired, or agreed, to offer, pay, solicit, or receive health care kickbacks;
>
> (B) Second, that the defendant knowingly and voluntarily joined the conspiracy;
>
> (C) *And third, that a member of the conspiracy did one of the overt acts described in the indictment for the purpose of advancing or helping the conspiracy.*

18 U.S.C. § 371 (emphasis added). By contrast, the health care and wire fraud conspiracy count requires only the following two elements:

> (A) First, that two or more persons conspired, or agreed, to commit the crime of health care fraud and wire fraud; and
>
> (B) Second, that the defendant knowingly and voluntarily joined the conspiracy.

18 U.S.C. § 1349.

Therefore, the general kickback conspiracy in Count 2 requires proof of an element—that a member of the conspiracy did one of the overt acts described in the indictment for the purpose of advancing the conspiracy—that is not required by the health care and wire fraud conspiracy in Count 1. *Blockburger*, 284 U.S. at 304.

(Govt.'s Br. at 10-11). The Government's brief also asserts additional reasons as to why it believes the *Blockburger* test is met here. (*Id.* at 12-14).

This Court agrees with the Government that, under the *Blockburger* test, Counts 1 & 2 are not multiplicitous. The Court therefore rejects the second argument raised in Defendants' Motions to Dismiss.

**CONCLUSION & ORDER**

For the reasons set forth above, IT IS ORDERED that Defendants' Motions to Dismiss are

DENIED.

IT IS SO ORDERED.

S/Sean F. Cox
Sean F. Cox
United States District Judge

Dated:  February 29, 2016

I hereby certify that a copy of the foregoing document was served upon counsel of record on
February 29, 2016, by electronic and/or ordinary mail.

S/Jennifer McCoy
Case Manager

12